

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Petitioner, | ) ) ) |
| V. | ) CIVIL ACTION NO. |
| REAL PROPERTY KNOWN AS LOT 6, BLOCK 2 OF LA CALETA ESTATES, VAL VERDE COUNTY, TEXAS, WITH ALL BUILDINGS, APPURTENANCES AND IMPROVEMENTS THEREON, | ) ) ) ) ) ) |
| Respondent. | ) |

FILED
DEC 28 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

SA07CA1048 XR

## UNITED STATES OF AMERICA'S
### EX PARTE APPLICATION TO FILE UNDER SEAL, ITS APPENDIX A, WHICH IS ENTITLED FACTS PERTINENT TO VIOLATIONS IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and moves this Court to enter an order permitting the United States to file its *Ex Parte* Application to File Under Seal, its Appendix A, which is Entitled Facts Pertinent to Violations in Support of Verified Complaint for Forfeiture, on the basis that said Appendix A contains facts which are related to an ongoing criminal investigation and could jeopardize the safety of potential witnesses at this time.

It is requested that one copy of each sealed document be provided to Assistant United States Attorney Diana Cruz-Zapata, United States Attorney's Office, San Antonio Division.

WHEREFORE, premises considered, the United States moves this Honorable Court to grant its *Ex Parte* Application to File Under Seal, its Appendix A, Which is Entitled Facts Pertinent to Violations in Support of Verified Complaint for Forfeiture.

Respectfully submitted,

JOHNNY SUTTON
United States Attorney

By: _____
    for Diana Cruz-Zapata
    Assistant United States Attorney
    Chief, Asset Forfeiture Section
    601 N.W. Loop 410, Suite 600
    San Antonio, Texas 78216
    (210) 384-7040
    Fax: (210) 384-7045
    Texas Bar No. 05196800

# APPENDIX A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| V. | ) CIVIL ACTION NO. |
| | ) |
| REAL PROPERTY KNOWN AS LOT 6, | ) |
| BLOCK 2 OF LA CALETA ESTATES, | ) SA07CA1048 XR |
| VAL VERDE COUNTY, TEXAS, WITH | ) |
| ALL BUILDINGS, APPURTENANCES | ) |
| AND IMPROVEMENTS THEREON, | ) |
| | ) |
| Respondent. | ) |

SEALED

## FACTS PERTINENT TO VIOLATIONS
## IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE

Law enforcement agents of the Federal Bureau of Investigation, along with agents of the U.S. Army Criminal Investigation Command's Major Procurement Fraud Unit; Immigration and Customs Enforcement (ICE); the Internal Revenue Service (IRS), Criminal Investigation Division; and Air Force Office of Special Investigations (AFOSI), are conducting an investigation regarding the following alleged violations committed by David Ricardo Ramirez and his sister, Yolanda Urbano, (also known as Yolanda Ramirez): Title 18 United States Code (USC) § 201 (Bribery), Title 18 USC § 371 (conspiracy); Title 18, USC § 1001 (False Statements); Title 18 USC § 1956 and 1957 (money laundering); Title 31 USC § 5324 (a) (causing or attempting to cause a domestic financial institution to fail to file a report required by the Secretary of the Treasury); Title 31 USC § 5324 (c)(1) (failure to file a report or causing or attempting to cause a person to fail to file such report in connection with an attempted transportation of over $10,000 in monetary instruments into the U.S. or in connection with receiving over $10,000 in monetary instruments transported into the U.S. from

a place outside the U.S.); Title 31 USC § 5324(c)(2) (file or cause or attempt to cause a person to file a report in connection with an attempted transportation of over $10,000 in monetary instruments into the U.S. or in connection with receiving over $10,000 in monetary instruments transported into the U.S. from a place outside the U.S. that contains a material omission or misstatement of fact); Title 31 USC § 5324(c)(3) (structuring or assisting in structuring, or attempt to structure or assist in structuring, any importation or exportation of monetary instruments); Title 31 USC § 5332 (bulk cash smuggling into or out of the U.S.); and Title 41 U.S.C. § 53 (2) (Anti-Kickback Act).

The facts set forth in this affidavit are based on personal knowledge, knowledge obtained during my participation in this investigation from other individuals, including other law enforcement officers, interviews of cooperating individuals, review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

This affidavit is in support of a Verified Complaint for Forfeiture *in rem* filed by the United States Attorney for the Western District of Texas and Assistant United States Attorney Diana Cruz-Zapata, against the following real and personal property described below:

a. 1989 Lamborghini, Vehicle Identification Number (VIN) ZA9CA05A9KLA12461;

b. Unit 3326, The Island on Lake Travis Condominiums, a condominium project in Travis County, Texas, together with the limited common elements, and an undivided interest in and to the general common elements, as same are defined in the condominium declaration. Physical address of condominium is 3404 American Drive, Unit 3326, Lago Vista, Texas 78645;

c. Lot 6, Block 2 – La Caleta Subdivision, Val Verde County, La Paloma Drive, Del Rio, Texas; and

d.  2007 Ducati Model 1098S Motorcycle, VIN ZDM1XBEW87B001182

As set forth herein, there is probable cause to believe that the funds utilized to purchase these assets were funds involved and/or traceable to violations of Title 31 U.S.C. § 5324(a)(1), c(1), c(2), and c(3) and/or Title 31 U.S.C. § 5332.

Law enforcement agents involved in this investigation have learned that David Ricardo Ramirez (Ramirez) is currently on felony probation in Bexar County, Texas, for a December 18, 2003 conviction for possession of a controlled substance. Agents have also learned that Ramirez has been arrested numerous times for violations including robbery, theft by check, possession of marijuana, possession of a controlled substance (two arrests), unlawfully carrying a weapon, driving while intoxicated (two arrests), driving while license suspended, and driving while license invalid (four arrests).

Based upon a query of the Department of Defense Employee Interactive Database, law enforcement agents know that Ramirez is a citizen of the U.S. who worked in Balad, Iraq, as a civilian employee of Readiness Management Support, Inc. (RMS), a military contractor. Ramirez' employment with RMS began on November 1, 2006, and ended on November 30, 2007. RMS has a contract with the U.S. Air Force relating to the Air Force's Contract Augmentation Program. Through the augmentation program, the Air Force maintains and supports Air Force operations overseas. Ramirez' job title was "Installation Community Planner" and his duties included planning sites for new construction and determining the locations on which entities, including military contractors, construct facilities. According to Ramirez' contract with RMS, Ramirez is precluded from working for other companies, precluded from receiving payments from anyone other than RMS, and precluded from accepting bribes, gratuities, and/or kickbacks.

3

In Iraq, non-Iraqi contractors base their operations on military bases. Ramirez would determine where the contractors would be located on the military base and therefore Ramirez' position placed him in a position of authority with regard to contractors doing business with the U.S. Based upon affiant's training and experience, affiant knows that persons in positions such as those that Ramirez held, are likely to be offered bribes, gratuities, and kickbacks.

Ramirez, like other civilian and military workers accompanying the U.S. military in Iraq, is paid by RMS through electronic funds transfers directly into his SACU Bank Account # 62093125. Examination of Ramirez' account records at San Antonio Federal Credit Union (SACU) reflect that during Ramirez' assignment in Iraq, (from 2006 until the present), he received bi-weekly direct payroll deposits from RMS. The only other significant deposits made into this account consisted of cash deposits which are described below.

According to documents provided by Ramirez' Bexar County Probation Officer and the United States Postal Service, Ramirez' sister, Yolanda Urbano, resides at 3610 Rockview, San Antonio, Texas.

On August 23, 2007, federal agents became aware that Ramirez and Yolanda Urbano were involved in the possible structuring of currency deposits to evade U.S. Treasury reporting requirements. Specifically, the investigation revealed that between January 2007 and November 2007, Ramirez sent, by Federal Express, United States Currency to Urbano. The Federal Express packages were sent from Iraq to Urbano at 3610 Rockview, San Antonio, Texas. Urbano would then make multiple cash deposits into Ramirez's SACU account in increments just under $10,000.00.

According to records of FedEx, on March 16, 2007, April 14, 2007, May 8, 2007, August 7, 2007 (two packages), and October 5, 2007, Urbano received six FedEx packages sent to her in San

4

Antonio from Ramirez in Iraq. The address given to FedEx for Urbano was 3610 Rockview in San Antonio. At that time agents obtained records from the above described SACU account of Ramirez and an analysis of those records, along with records from Federal Express reveal the following:

1. A review of Ramirez' SACU account activity for 2007 revealed that, between January 22, 2007, and July 20, 2007, 11 cash deposits consisting of $100 U.S. Bills, totaling around $80,000 was deposited into Ramirez' account. In four of the 11 deposits, Urbano was identified as the depositor and efforts are underway to identify who was responsible for the other deposits. On January 22, 2007, a cash deposit of $8,000 in $100 bills was made into Ramirez' account. On January 30, 2007, a cash deposit of $9,000 in $100 bills was made into Ramirez' account. On February 6, 2007, another cash deposit of $9,000 in $100 bills was made into Ramirez' account. On March 1, 2007, Urbano made an $8,000 cash deposit consisting of $100 bills into Ramirez' account. On March 7, 2007, another cash deposit of $8,000 was made into Ramirez' account.

2. FedEx Records indicate that, on March 16, 2007, a package addressed to Urbano was received at her home address of 3610 Rockview, San Antonio, Texas from Ramirez, who was in Iraq. On March 22, 2007, $7,825 in $100 bills was deposited into Ramirez' account. At 10:07 a.m. on April 14, 2007, FedEx records indicate that a package addressed to Urbano was received at 3610 Rockview from Ramirez in Iraq. At 11:14 a.m. on April 14, 2007, Urbano went through SACU's drive-through lane and deposited $9,000 in $100 bills into Ramirez' account. On May 4, 2007, Urbano went through SACU's drive-through and deposited $5,400 in $100 bills into Ramirez' account. On May 7, 2007, $4,500 in $100 bills was deposited into Ramirez' account.

5

3. On May 8, 2007, FedEx records indicate a package addressed to Urbano was received at 3610 Rockview from Ramirez who was in Iraq.

4. On July 3, 2007, Urbano deposited $9,000 in $100 bills into Ramirez' account. On July 20, 2007, $1,000 in $100 bills was deposited into Ramirez' account.

5. A further review of Ramirez' SACU account indicates that between August 17 and August 22, 2007, Urbano made seven deposits into Ramirez' account at SACU. The deposits all consisted solely of new, sequentially numbered $50 bills. SACU recorded the serial numbers of these bills. On August 17, 2007, Urbano entered SACU, approached a teller, and attempted to deposit a large number of $50 bills into Ramirez' account. The SACU employee explained to Urbano that, in connection with the deposit of more than $5,000 in currency, SACU policy required the customer to provide identification for use in documenting the currency transaction. Urbano questioned having to provide identification and the need to fill out a form, but provided her identification and stated that she was the mother of David Ramirez who was overseas with the military. Urbano then deposited $9,750 in new sequentially numbered $50 bills.

6. On August 20, 2007, SACU received a night drop for Ramirez' account. The deposit was received in a deposit envelope and was marked with David Ramirez' name and account number $9,750 in new, sequentially numbered, $50 bills. On the afternoon of August 20, 2007, Urbano proceeded through the SACU drive-through lane and placed $9,750 in new sequentially numbered $50 bills into a deposit envelope. The deposit envelope and was marked with David Ramirez' name and account number. Urbano drove off without talking to the teller and without getting a receipt. The drive-through teller who observed Urbano was

6

the same teller who previously sought identification from Urbano in connection with the August 17, 2007 deposit.

7. On August 21, 2007, a night-drop deposit of $9,650 in sequentially numbered $50 bills was received by SACU. The deposit was made in a deposit envelope, marked in the same manner as previous deposits, directing deposit into David Ramirez' account. On August 21, 2007, Urbano went through the SACU drive-through lane and placed $9,500 in sequentially numbered $50 bills for deposit in an envelope marked in the same manner as previous deposits. Urbano drove off without speaking with a teller or obtaining a receipt.

8. On August 22, 2007, a night-drop deposit of $9,650 in sequentially numbered $50 bills was received for deposit into David Ramirez' account. On August 22, 2007, Urbano went through SACU's drive-through lane and placed $9,750 in sequentially numbered $50 bills in a deposit envelope marked in the same manner as previous deposits. She did not speak to a teller and left without a receipt.

9. On August 7, 2007, prior to the above deposits, FedEx Records indicate Urbano received two packages at the 3610 Rockview from Ramirez who was in Iraq.

10. SACU was able to identify Urbano as the responsible party on most of the deposits based upon review of videotapes of the drive-through and night-deposit facilities.

According to records of the Federal Reserve System, on July 5, 2007, the currency bearing the serial numbers recorded by SACU for one of the deposits was transferred by the Federal Reserve Bank of Miami, to HSBC Bank, Germany, who in turn, sold the currency to Bank of America, Germany. Bank of America records indicate that the same currency was delivered to the U.S. Army's 13th Finance Group in Balad, Iraq on July 12, 2007. On its website, the 13th Finance Group's

mission is listed as: "Ensure financial readiness of III Corps Units. On order, deploy and conduct finance support for all commands, units, and soldiers located within the III Corps area of responsibility."

Ramirez utilized cash deposits in the total amount of $144,599.26, plus $600.00 from Yolanda Urbano's account at the Bank of America, for a total of $145,199.26, from the period 01/22/2007 through 08/22/2007 to purchase the following four (4) assets totaling $236,963.73:

1.  A Ducati motorcycle was purchased beginning 01/07/2007. Check number 222 was written by Ramirez against his checking account in the amount of $2,000.00, payable to KC International, which cleared his account on 01/23/2007. On 02/08/2007, check draft # 01190661 was purchased in the amount of $22,000.00, which was made payable to KC International. Finally, on 04/20/2007, check number 1003 was written in the amount of $8,786.85, payable to KC International, which cleared Ramirez' account on 04/25/2007. Total payments to KC International were $32,786.85.

    The source of these funds was two (2) cash deposits in the amounts of $8,000.00 on 01/22/2007 and $9,000.00 on 01/30/2007, totaling $17,000.00, and $15,786.85 from payroll earnings.

2.  A Lamborghini vehicle was purchased from the checking account with check number 1000 payable to Steven Waldie dated 04/06/2007, in the amount of $79,675.00, which cleared his account on 04/04/2007 (it appears that the check was post-dated when he gave it to Waldie). The source of these funds was $31,899.26 in cash and $47,775.74 from payroll earnings. The cash deposits consisted partially of an initial deposit into his savings account in the amount of $9,000.00 on 02/06/2007. On 02/08/2007, $50,000.00 was transferred from the

8

savings account to open the money market account, which consisted of $5,000.00 of the cash deposit to savings on 02/06/2007 and $45,000.00 from income earnings which had been transferred from the checking account to the savings account. Subsequently, $8,000.00 cash was deposited to the money market account on 03/01/2007, $8,000.00 on 03/07/2007 and $7,825.00 on 03/22/2007, totaling $28,825.00. On the date he wrote the check for the Lamborghini, he transferred $70,103.00 to the checking account from the money market account, which included the $28,825.00 cash plus $41,278.00 in earned income. The balance of funds utilized for the Lamborghini purchase from the checking account in the amount of $9,572.00 consisted of $3,074.26 in cash which was transferred from the savings account (from the $9,000.00 cash deposit on 02/06/2007) to the checking account in the amounts of $1,174.26 on 02/20/2007, $400.00 on 02/22/2007 and $1,500.00 on 03/18/2007, and $6,497.74 from income earnings.

Therefore, the Lamborghini was purchased with $31,899.26 cash and $47,775.74 from income earnings.

3. Property in Del Rio, Texas, was purchased on 05/04/2007 with check number 1004, in the amount of $24,594.30, payable to Del Rio Title Company, which cleared his checking account on 05/09/2007.

The source of these funds was $18,900.00 cash, $600.00 from sister (subject) Yolanda R. Urbano and $5,094.30 from income earnings. Cash deposits were made into the money market account on 04/14/2007 in the amount of $9,000.00 and on 05/04/2007 in the amount of $5,400.00, totaling $14,400.00. The deposit on 05/04/2007 included a check number 1291 drawn by Yolanda R. Urbano on her Bank of America account number 5783159875 in the amount of $600.00. On

9

05/09/2007, a transfer was made from the money market to the checking account in the amount of $15,000.00. A cash deposit was made to the checking account on 05/07/2007 in the amount of $4,500.00.

Therefore, total cash utilized was $18,900.00, transfer from Yolanda Urbano was $600.00, with the remainder of funds from income earnings in the amount of $5,094.30.

4. A condominium was purchased in Travis County with wire transfers to the account of First American Title Company account number 08806325757 at JP Morgan Chase Bank, in the total amounts of $5,000.00 on 07/20/2007 for "Unit #3326" from the checking account and $94,907.58 on 08/24/2007 for "GF 1065914" from the money market account, totaling $99,907.58.

The source of these funds was cash in the amount of $76,800.00 and income earnings in the amount of $23,107.58. Cash deposits were made to the money market account in the amounts of $9,000.00 on 07/03/2007, $9,750.00 on 08/17/2007, $9,750.00 on 08/20/2007, $9,750.00 on 08/20/2007, $9,500.00 on 08/21/2007, $9,650.00 on 08/21/2007, $9,650.00 on 08/22/2007, and $9,750.00 on 08/22/2007, totaling $76,800.00. Prior to and during the wire transfer on 08/24/2007 from the money market account, several transfers were made back and forth from checking account to the money market account.

Therefore, total cash utilized for the purchase of the condominium was $76,800.00, with the remainder in the amount of $23,107.58 from income earnings.

In addition SACU records indicate that on August 23, 2007, Ramirez submitted a wire request through his U.S. Air Force email account, david.ramirez@blab.centaf.af.mil, to have $94,907.58 wired to a title company in Lago Vista, Texas, to fund the purchase of a condominium.

10

On October 5, 2007, FedEx notified Agents that Ramirez had submitted a package for shipment from Balad, Iraq, to Yolanda Urbano, 3610 Rockview, San Antonio, Texas, which contained $14,800 in currency. The identifying information submitted by the shipper on the manifest/FedEx Air bill included Ramirez' name and listed his email address as dram3di@yahoo.com.

Agents in Iraq, who are assisting in the investigation, examined the package and determined that the $14,800 consisted mostly of sequentially numbered $50 and $100 U.S. bills and was concealed inside a humidor. Agents took temporary possession of the package, inventoried the contents, and forwarded the package to Urbano's address with the contents intact. On October 12, 2007, Affiant and other Agents involved in this investigation surveilled Yolanda Urbano as she left her residence at 3610 Rockview proceeded to the FedEx pickup station and accepted the package mailed to her by Ramirez.

According to the SACU, on October 15, 2007, Urbano proceeded through the drive-through lane and dropped off a deposit envelope with David Ramirez' name and account number and $4,000 in sequentially numbered $100 bills, and drove off without speaking to a teller or getting a receipt. Agents verified that the bills were among those shipped from Balad, Iraq. On October 18, 2007, a night deposit of $3,000 in U.S. bills determined to have been shipped by Ramirez from Balad, Iraq, was left at SACU in an envelope marked for deposit to Ramirez account in the same manner as previous deposits. On October 19, 2007, Urbano drove through the drive-through of a different SACU branch and dropped off a deposit envelope marked with David Ramirez' name and account number and the $4,000 in sequentially numbered $100 U.S. bills and drove off without speaking to a teller or getting a receipt. Agents verified that the bills were among those shipped by Ramirez from

11

Balad, Iraq. On October 22, 2007, $2,900 in mostly sequentially numbered $50 bills was left in SACU's night-deposit box for deposit into Ramirez' account. Agents verified that the bills were among those shipped by Ramirez from Balad, Iraq.

According to Bank of America records, the currency within the October 5, 2007, FedEx Shipment was sold to various U.S. Army Finance Offices in Balad, Iraq between January and September 2007. The investigation has revealed that Middle Eastern contractors are paid in cash for their work on reconstruction efforts.

On October 18, 2007, David Ramirez arrived at Dallas Fort Worth Airport on an international flight and was processed through Customs. Inspectors examined the contents of Ramirez' wallet and found a list of contacts, including "Yolanda." After the name Yolanda, was listed the address 3610 Rockview, San Antonio, Texas, telephones 210/561-6032 and 210/601-0766 along with the email address cyurbano@satx.rr.com.

In connection with his employment with RMS, Ramirez was required to have a security clearance. Agents have obtained a copy of the Standard Form (SF) 86 security questionnaire that Ramirez completed to obtain this clearance. In section 23 of the SF-86 form (which pertains to the applicants police record), Ramirez answered "no" to the following questions, which violated Title 18 USC § 1001 (False Statements):

- Have you ever been charged with or convicted of any felony offense?
- Have you ever been charged with or convicted of a firearms or explosives offense?
- Are there currently any charges pending against you for any criminal offense?
- Have you ever been charged with or convicted of any offense(s) related to

12

    alcohol or drugs?

   · In the last 7 years, have you been arrested for, charged with, or convicted of any offense(s) not listed in response to a, b, c, d, or e above? (Leave out traffic fines of less than $150 unless the violation was alcohol or drug related).

On November 1, 2007, Internal Revenue Service Special Agent Jason Gamez queried Department of the Treasury data bases used to record Currency Monetary Instrument Reports (CMIR), those reports required by Treasury regulations to be filed by individuals or entities when transporting more than $10,000 in monetary instruments, including U.S. currency, into or out of the United States. Agent Gamez determined that, for calendar year 2007, no CMIR reports had been filed by or on behalf of David Ramirez or Yolanda Urbano.

Based upon the foregoing facts and upon law enforcement agents' training and experience, there is probable cause to believe that David Ramirez is smuggling large sums of U.S. currency into the U.S. from Iraq, that he is evading currency reporting requirements, and that he has purchased the above-described assets with said currency. Therefore, the Respondent Property is in violation of Title 31 U.S.C. § 5324 and subject to forfeiture to the United States of America pursuant to Title 31 U.S.C. § 5317(c)(2) and/or violations of Title 31 U.S.C. § 5332 and subject to forfeiture to the United States of America pursuant to Title 31 U.S.C. § 5332(c)(1).